**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 20-27-DLB-EBA**

**ARC RESOURCE MANAGEMENT, INC.**                                    **PLAINTIFF**

**v.**

**CIVIL, LLC**                                                                          **DEFENDANT**

--------- <u>**MEMORANDUM OPINION AND ORDER**</u>

**CIVIL, LLC**                                                          **COUNTERCLAIM-PLAINTIFF**

**v.**

**BURNING KNOB RESOURCES, INC., et al.**          **COUNTERCLAIM-DEFENDANTS**

******************

## I.    INTRODUCTION

This matter is before the Court upon five Motions filed by Defendant and Counterclaim-Plaintiff Civil, LLC ("Civil"): (1) its Motion for Partial Summary Judgment (Doc. # 104), (2) its Motion for Leave to File a Sur-Reply (Doc. # 158), (3) its Motion to Exclude Expert Testimony (Doc. # 163), (4) its Motion for Summary Judgment on Defendant's Counterclaims (Doc. # 164), and (5) its Motion for Summary Judgment on Plaintiff's Claims (Doc. # 165). The Court held oral arguments on all ripe motions on February 18, 2025 (Doc. # 188). Plaintiff and Counterclaim Defendants were represented by Richard A. Getty. Defendant and Counterclaim Plaintiff was represented by Karen Greenwell. At the conclusion of the hearing, the Court took the Motions under submission. (*Id.*)

For the following reasons, Defendant's Motion for Partial Summary Judgment (Doc. # 104) is **granted**; its Motion for Leave to File a Sur-Reply (Doc. # 158), Motion to Exclude Expert Testimony, and Motion for Summary Judgment on Plaintiff's Claims (Doc. # 165) are each **denied as moot**; and its Motion for Summary Judgment on Defendant's Counterclaims (Doc. # 164) is **granted in part and denied in part**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case originally revolved around ARC Resource Management, Inc. ("ARC") alleging that Civil breached an agreement relating to mining activities in Buchanan County, Virginia by failing to mine 38,000 tons of coal.  (Doc. # 1 at 1).  Since then, the case has "evolved to involve multiple corporate entities, complex claims and counterclaims, and possible damages of more than $15,000,000."  (Doc. # 109 at 1).  The Court will attempt to carefully and succinctly summarize the events of the last eight years.

In 2017, CM Land and Coal LLC ("CM Land"), controlled by Dale Murray and Robert Crowder, purchased coal interests in Buchanan County, Virginia from Buchanan Energy Company, LLC.  (Doc. # 104-5 at 2).  CM Mining, LLC, also controlled by Murray and Crowder, obtained numerous mining permits on that property.  (*Id*.).  In August of 2018, CM Land entered into a Coal Lease with Burning Knob Resources, Inc. ("Burning Knob"), a corporation also owned by Murray and Crowder.  (*Id*.; *see also* Doc. # 165-2). The Coal Lease between CM Land and Burning Knob gave Burning Knob control of the mining of the coal subject to that lease.  (Doc. # 104 at 3).

To engage in a surface mining operation, Burning Knob submitted an application to the Virginia Department of Mines and Minerals Enforcement ("VDMME").  (Doc. # 165 at 3).  To obtain this permit, an applicant must post bond.  (Doc. # 104 at 4).  In this case,

the initial bond for the permit was $1,731,500.  (*Id*.).  The bond was secured by certificate deposits provided by Burning Knob, which were funded by Wellmore Coal Company, LLC ("Wellmore").[1]  (Doc. # 164 at 3).  The VDMME issued a permit to Burning Knob on October 16, 2019.  (Doc # 104 at 4).

In anticipation of obtaining the permit, Mega Highwall Mining ("Mega") agreed to perform the mining once the permit was issued.  (*Id*.).  Due to delays related to the permit process, Mega was ultimately unable to handle the mining as agreed.  (*Id*.).  As a result, discussions with John Quintrell, principal of Civil, began, with oral agreements that Civil would mine the coal.  (*Id*.; s*ee also* Doc. # 164 at 3).  On October 16, 2019, Civil received a license to conduct mining on the permit.  (Doc. # 165 at 4).  On October 23, 2019, Civil formally entered into two different agreements.  (Doc. # 104 at 6).  The first agreement was the Contract Mining Agreement (the "Mining Agreement"), entered into with ARC, a corporation created by Murray and Crowder.  (Doc. # 128 at 6).  The Mining Agreement addressed how Civil would conduct the mining operations.  (Doc. # 165 at 4).  The second was the Material Handling and Coal Transportation Agreement (the "Material Agreement") entered into with Burning Knob, which addressed Civil's material handling and coal transportation services related to the mine.  (*Id*.).

From this point forward, the facts are highly contested.  Civil alleges that prior to mining, it had to complete multiple preliminary activities such as clearing the mining bench of debris.  (Doc. # 165 at 5).  After the mining area was cleared, mining officially began

---

[1]     Burning Knob and Wellmore entered into an agreement (the "Wellmore Option") giving Wellmore the option to purchase the mined coal from Burning Knob.  (Doc. # 164 at 3).  In exchange, Wellmore agreed to front the money for the permit bond.  (*Id*.).

around mid-November 2019.[2]  (Doc. # 164 at 4).  According to ARC, Civil was to mine a minimum of 38,000 raw tons of coal per month from the property.  (Doc. # 165 at 5).  This is highly contested by Civil, which alleges that such requirement was subject to adjustment based on mining conditions.  (*Id*. at 7).  Specifically, Civil alleges that per language in the Mining Agreement, roadblocks such as proximity to roadways and undesignated wetlands relieved Civil of the 38,000 raw tons requirement.  (*Id*. at 6).  Nevertheless, by December 15, 2019, Civil had mined 21,983.49 tons of raw coal.  (Doc. # 165 at 11).  After various communications between Quintrell and Murray regarding payment, ARC sent Civil a "Notice of Termination" on December 20, 2019.  (*Id*.).  On January 2, 2020, Civil, by and through counsel, sent a letter to Murry and Crowder notifying them that Civil would begin reclamation activities.  (*Id*. at 12).  On January 6, 2020, Murray responded stating that Civil was "not permitted to do work on the property." (Doc. # 104-34).

Following these events, ARC filed the instant action in Pike Circuit Court on January 25, 2020, against Civil.  (Doc. # 1-1).  The Complaint alleged that Civil breached the Mining Agreement when it failed to mine 38,000 raw tons of coal.  (*Id*. ¶¶ 13-15).  Civil subsequently removed this case to this Court on February 28, 2020.  (Doc. # 1).  After numerous requests for deadline extensions, with this Court being "exceedingly lenient" in granting such requests, Civil filed its Motion for Partial Summary Judgment (Doc. # 104) on July 1, 2024.  On October 15, 2024, Civil filed the Motion to Exclude (Doc. # 163), Motion for Summary Judgment on Civil's Counterclaims (Doc. # 164), and Motion for

---

[2]    ARC's Complaint alleges that Civil commenced mining "on or about November 13, 2019." (Doc. # 1-1 ¶ 10).  However, Civil's Partial Motion for Summary Judgment (Doc. # 104) and ARC's expert report (Doc. # 104-3) allege that mining began on November 12th.

Summary Judgment on ARC's Claims (Doc. # 165).  On February 18, 2024, pursuant to ARC's Motion for a Hearing (Doc. # 155), this Court held a hearing on all ripe dispositive motions.  (*See* Docs. # 161, 174, and 188).

## III.    ANALYSIS

### A.    Standard of Review

Civil has moved for summary judgment on ARC's remaining claims.  (Doc. # 77). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  The movant may do so by "citing to particular parts or materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

Additionally, "[a] federal court sitting in diversity applies the substantive law of the state in which it sits." *Hayes v. Equitable Energy Res. Co*., 266 F.3d 560, 566 (6th Cir. 2001). This Court is located in Kentucky, where there is a strong preference for applying Kentucky law. The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Asher v. Unarco Material Handling, Inc*., 737 F.Supp.2d 662, 667-68 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x. 798, 803 (6th Cir. 2005)). Here, the Mining Agreement contains a choice of law provision which states: "[t]his agreement and the rights, duties, obligations, and remedies of the parties hereunder shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky." (Doc. # 104-1 at 10). Additionally, the Material Agreement contains a choice of law provision which states: "[t]his Agreement shall be governed and construed in accordance with the laws of the State of Virginia." (Doc. # 104-17 at 25). Therefore, the Court will apply applicable Kentucky law when discussing the Mining Agreement and Virginia law when discussing the Material Agreement.

### B.    Analysis

The Court will address Civil's Motion to File a Sur-Reply (Doc. # 158), Motion for Partial Summary Judgment (Doc. # 104), Motion to Exclude (Doc. # 163), Motion for

Summary Judgment on Defendant's Counterclaims (Doc. # 164), and Motion for Summary Judgment on Plaintiff's Claims (Doc. # 165) in turn.

### 1.  Civil's Motion to File a Sur-Reply

Civil moved to file a sur-reply in opposition to ARC's Motion for a Hearing.  (Doc. # 158).  Given that this Court has already held the hearing, that Motion is **denied as moot**.

### 2.  Civil's Motion for Partial Summary Judgment

Civil moves for entry of summary judgment on all of ARC's claims on the grounds that ARC's damages are not recoverable as a matter of law.  (Doc. # 104 at 1). Specifically, Civil argues that ARC's alleged damages were not incurred by ARC, warranting summary judgment on ARC's breach of contract claim (Count I), and the good faith and fair dealing claim (Count II).[3]  (Doc. # 104 at 3).  Alternatively, Civil argues that even if the alleged damages could be asserted by ARC, the damages are consequential and are therefore expressly prohibited by the terms of the Mining Agreement.  (*Id*.).  In response, ARC argues that it has a right to assert its alleged damages because it acted as the actual and apparent agent of Burning Knob Resources, and the damages sought are direct rather than consequential damages.  (Doc. # 128 at 24).

### a.    ARC is not permitted to recover damages on Burning Knob's behalf.

ARC's Complaint alleges that Civil's "failure to meet its minimum mining obligation under the [Mining] Agreement constitutes a breach of the [Mining] Agreement."  (Doc. # 1-1 ¶ 14).  As a result of the breach, ARC claims it "suffered and will continue to suffer

---

[3]    Defendant states that because the breach of contract claim must be dismissed, the breach of the covenant of good faith and fair dealing claim should also be dismissed because it "cannot stand alone as an independent cause of action."  (Doc. # 104 at 1 n.1).

damages." (*Id*. ¶ 12). ARC's damages include: (1) additional material handling, (2) lost profits related to short holes, (3) lost profits on sterilized tons, (4) penalties paid for Civil, and (5) bond collateral forfeited. (Doc. # 165-35 at 19).[4] In its Partial Motion for Summary Judgment, Civil urges this Court to grant summary judgment in its favor "[b]ecause every category of ARC's damages relate directly to the costs incurred or lost profits allegedly suffered by Burning Knob" and therefore "[a]s a simple matter of contract law, ARC cannot claim such damages." (Doc. # 104 at 10-12).

In its Response, ARC does not seem to deny that some, if not all, of the alleged damages were suffered by Burning Knob. (*See* Doc. # 128 at 21) ("Civil is incorrect in claiming that ARC cannot recover the full measure of damages [] merely becomes some of those damages are those of ARC's principal, Burning Knob."). Rather, ARC argues that ARC and Burning Knob were in a principal-agent relationship, and as such, " because Civil knew ARC was authorized to enter the Mining Contract in its own name [], ARC was authorized to file suit against Civil and is authorized to seek damages under both contracts." (*Id*. at 19-20).

### i.    *Principal-agent relationship*

"Ordinarily, the obligations arising out of a contract are due only to those with whom it was made. . . ." *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004). This means that, "[a]s a general rule, only the parties to a contract may sue to enforce its provisions." *ClubSpecialists Intl., LLC v. Keenland Association, Inc*., No. 5:16-cv-345, 2018 WL 2050134, at * 5 (E.D. Ky. May 2, 2018). Moreover, "whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must

---

[4]    The damage report was revised on September 27, 2024. (*See* Doc. # 154).

be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto." *Presnell*, 134 S.W.3d at 579.

A well-recognized exception to the privity of contract requirement is the third-party beneficiary exception. However, as Civil has pointed out, the Mining Agreement prohibits third party beneficiaries, and as ARC has conceded, "this is not a third-party beneficiary case." (Doc. # 128 at 15). Rather, ARC argues that due to the principal-agent relationship between ARC and Burning Knob, ARC is permitted to seek damages on behalf of Burning Knob. To the best the Court can discern, it appears that ARC's agency argument is twofold. First, ARC argues that because it acted as an agent for Burning Knob when it entered into the Mining Agreement, it is permitted to seek damages on behalf of Burning Knob, despite Burning Knob not being a party to the Mining Agreement. Second, ARC seems to argue that as Burning Knob's agent, it is permitted to seek damages suffered by Burning Knob under the Material Agreement, of which ARC is not a party to. (*See id*. at 20) ("ARC was authorized to file suit against Civil and is authorized to seek damages under both contracts.").

The Court will first briefly address the second part of ARC's argument. ARC's Complaint, along with its damages report, refers only to Civil's alleged breach of the Mining Agreement. (*See* Doc. # 1-1 ¶ 14) ("[F]ailure to meet its minimum mining obligation under the [Mining] Agreement constitutes a breach of the [Mining] Agreement."); (*see also* Doc. # 104-3 at 1) ("WEIR was asked to prepare an expert report providing professional opinion regarding Civil's performance under the [Mining] Agreement]. . . ."). As such, the Court will not substantively discuss whether ARC is

9

permitted to seek damages for breach of contract under the Material Agreement, of which it is not a party to, when ARC has not pled that such Agreement was ever breached. "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2723 (3d ed. Supp.2005)). And "a plaintiff may not expand its claims to assert new theories ... in response to summary judgment[.]" *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 454 n.6 (6th Cir. 2020). Therefore, this Court will only substantively address whether ARC is permitted to seek damages under the Mining Agreement, when those damages were admittedly suffered by Burning Knob.

ARC's argument is curious. ARC has pointed to no Kentucky law, nor has the Court itself found any Kentucky law, on point with ARC's argument.[5] Specifically, the Court has not found any case in the Commonwealth that addresses the issue of whether a party who contracted in their own name, and filed suit in their own name, may recover damages which were suffered by a third party not privy to the contract. In an attempt at finding on point case law, ARC relies upon *Higgens v. Sowards*, a 1914 Kentucky Court of Appeals case. There, the Court stated that "when a contract is entered into with an agent in his own name, the promise being made directly to him, he may maintain an action on such contract without joining the person beneficially interested." 169 S.W. 554, 555

---

[5] The Court acknowledges that ARC has directed the Court to numerous state court cases, including Texas, Maryland, Kansas, California, Michigan, and Alaska in defending its argument. (Doc. # 128 at 19-21). However, the Court notes that these cases are neither binding nor persuasive.

(Ky. 1914). ARC misunderstands this authority. *Higgens* was not granting an agent who had contracted in his own name permission to seek damages on behalf of the principal, who was not a party to the contract, when the agent itself did not suffer said damages. Rather, *Higgens* holds that an agent may sue the party it has contract privity with, without being required by law to join its principal to the action.

Given the lack of Kentucky case law on this issue, the Court looks toward the Restatement (Third) of Agency in an attempt to receive guidance. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006). An agent's authority may be actual or apparent. Actual authority occurs when the agent "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id*. at § 2.01. Alternatively, apparent authority occurs when "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id*. at § 2.03.

Moreover, a principal may be disclosed or undisclosed. A principal is disclosed when "the third party has notice that the agent is acting for a principal and has notice of the principal's identity." *Id*. at § 1.04(2)(a). A principal is undisclosed "if, when an agent and third party interact, the third party has no notice that the agent is acting for a principal." *Id*. at § 1.04(2)(b). In entering into contracts with third parties, "an agent who acts on behalf of a disclosed principal may enter into a contract with a third party that by its terms excludes the principal as a party." In doing so, the principal "is not a party to the contract"

"because the third party has not manifested assent to an exchange with the principal." *Id*. at § 6.01(b). Similarly, "an undisclosed principal does not become a party to a contract if the contract excludes the principal. An explicit exclusion limits the third party's manifestation of assent to be bound." *Id*. at § 6.03(d).

Here, Civil disputes that the alleged principal-agent relationship, if there was one at all, was disclosed. However, for purposes of this analysis, identifying whether Burning Knob was a disclosed or undisclosed principal is immaterial. As noted above, a principal may be excluded from a contract whether such principal is disclosed or undisclosed. Assuming there was a principal-agent relationship, the question then is whether Burning Knob, acting as ARC's principal, was excluded from the Mining Agreement. In *Trina Solar*, the Second Circuit held that a principal was excluded from the contract at issue. 954 F.3d 567, 571 (2nd Cir. 2020).[6] There, the court found that the contract's bilateral language such as "either" or "neither," and explicit language naming one party the "Seller" and one party the "Buyer" was indicative of a bilateral contract excluding the principal from its terms. *Id*. at 571-72. Additionally, the inclusion of a third-party beneficiary clause which stated "[n]othing in this Contract is intended to confer on any person who is not a party hereto any right to enforce any term in this Contract" supported the conclusion that the principal was excluded from the contract. *Id*. at 571.

Similar to *Trina Solar*, Section 23 of the Mining Agreement contains a nearly identical provision, stating "[n]othing in this Agreement shall confer any right or remedies

---

[6]    The Court acknowledges that the *Trina Solar* case is not directly on point. Like most of the agency liability cases this Court has found, *Trina Solar*, address whether a principal was liable on a contract it was not a party to. However, in analyzing this issue, the Second Circuit discussed what language in a contract operates to explicitly exclude a principal. The Court looks toward that discussion for guidance.

on any person other than the parties hereto." [7]   (Doc. # 1-1 at 10).  Moreover, the Mining

Agreement makes no reference to Burning Knob and instead explicitly labels ARC as the

"Owner" and Civil as the "Contractor."  It is apparent to the Court that no one other than

the two named entities in the Mining Agreement, namely ARC and Civil, have any rights

under the Contract.  Therefore, assuming Burning Knob was ARC's principal, whether

disclosed or undisclosed, ARC effectively executed the Mining Agreement to exclude

Burning Knob.  Because Burning Knob was excluded from the contract, ARC may only

assert damages that it itself suffered.  *See Potter v. O'Connor*, No. 20-1825, 2023 WL

2054264, at * 11 (E.D. Pa. Feb. 16, 2023) (dismissing a Complaint because "the only

damages alleged in the [] complaint are those suffered by non-party companies

themselves" and therefore the plaintiffs "failed to allege facts sufficient to plausibly show

that they, as opposed to the non-party Companies suffered any injury[.]"); *see also Cale

v. Keim Lumber Co*., No. 20-1763, 2024 WL 493277, at * 8 (W.D. Pa. Feb. 18, 2024)

(dismissing claims on the grounds that Plaintiff was "seeking the benefit of recovery to

which [a third-party] would be entitled.").

### ii.    *ARC's asserted damages*

In finding that ARC may not assert damages on behalf of Burning Knob, the Court

must now look at whether such damages were in fact suffered by Burning Knob.  ARC

has alleged five categories of damages: (1) additional material handling, (2) lost profits

related to short holes, (3) lost profits on sterilized tons, (4) penalties paid for Civil, and (5)

---

[7]      While Section 23 is titled "NO THIRD PARTY BENEFICIARIES" the Court acknowledges that Section 21 of the Mining Agreement states that "all headings of the sections of this Agreement have been inserted for convenience of reference only [], and shall in no way affect the interpretation of any of the provisions of this Agreement."  (*Id*.).  The Court finds Section 21 to be unambiguous and therefore, pursuant to Section 21, does not limit Section 23 to third party beneficiary disputes.

bond collateral forfeited. (Doc. # 165-35 at 19). The material handling damages are based on the Material Agreement, which dictated the material handling, excavation, and transportation work Civil was to perform. As previously discussed, ARC is not permitted to assert damages resulting from a breach of the Material Agreement at this stage in proceedings. Second, ARC has conceded that the penalties paid, and bond collateral forfeited are Burning Knob's damages. (*See* Doc. # 28 at 13) ("Burning Knob [] was charged for eight penalties"); (*id*.) ("Burning Knob is ultimately responsible" for the amount of the bond collateral.).

Finally, with respect to lost profits, ARC alleges that it is entitled to lost profits related to short holes, and lost profits on sterilized tons. Regarding lost profits related to short holes, the WEIR Expert Report states that "[s]ince Civil failed to achieve a penetration depth of 800 feet . . . a total of 8,187 in-place tons of coal . . . was not mined" resulting in damages of $172,418. (Doc. # 165-35 at 19). WEIR calculated this damage based on a "sales contract between ARC and [Wellmore]" and Platts East Coast HVA index prices. (*Id*. at 15). Presumably, the Report contains a mistake, as there is no sales contract between ARC and Wellmore that is reflected in the record. There is, however, an undisputed sales contract between Burning Knob and Wellmore, in which Wellmore could purchase mined coal at a price based on the Platts East Coast HVA index. (*See* Doc. # 104-18 at 8). It is also undisputed that Wellmore did in fact purchase coal from Burning Knob pursuant to the Wellmore Option. (*See* Docs. # 104-19 and 104-20). It is further undisputed that Burning Knob, not ARC, had control over the mined coal pursuant to the Coal Lease between Burning Knob and CM Land and Coal LLC. (Doc. # 104-3).

Based on the record, it is clear that Burning Knob, not ARC, was a party to the contract on which the lost profits related to short holes was based. Similarly, the lost profits on sterilized tons came to a total of $13,658,471. (Doc. # 165-35 at 16). ARC alleges that because Civil did not deliver the Coal to Wellmore, "ARC was not able to fulfill its contractual obligations and [Wellmore] terminated the contract." (*Id.* at 15). As a result, ARC alleges it would presumably lose profits when it inevitably had to "find another customer for its highwall mined coal . . . ." (*Id.*) As noted above, there is nothing in the record that indicates that ARC and Wellmore had any agreement. Rather, the agreement was between Burning Knob and Wellmore. Therefore, it is clear to the Court that both categories of lost profits are based on possible profits Burning Knob would have suffered.

### b.    Consequential Damages

Civil further alleges that even if ARC could seek damages on Burning Knob's behalf, the damages are nevertheless unrecoverable because "the damages alleged are consequential and not recoverable under the terms of the Mining Agreement it seeks to enforce." (Doc. # 104 at 12). ARC disagrees, arguing that the damages are not special or unique to the project, but rather are direct damages "expected to flow to anyone entering such an agreement . . . ." (Doc. # 128 at 9). Because the Court finds that ARC may not assert any of the alleged damages on behalf of Burning Knob, it need not address this argument.

For the above reasons, Defendant's Partial Motion for Summary Judgment is **granted** and ARC's breach of contract claim is **dismissed**. Moreover, because ARC's breach of good faith and fair dealing claim may not stand alone, such claim is also **dismissed**. *See J.S. v. Berla*, 456 S.W.3d 19, 25 (Ky. App. 2015) ("While Kentucky

common law recognizes the obligation of good faith performance in every contract, violation of the good faith covenant alone does not give rise to an independent cause of action"); *Frakes v. Specialized Loan Services, LLC*, No. 2017-CA-000671, 2018 WL 1358023, at * 2 (Ky. App. 2018). (dismissing a good faith and fair dealing claim when the plaintiff did not allege breach of contract because "Kentucky law does not recognize an independent tort for breach of good faith and fair dealing . . . .").

### 3.    *Civil's Motion to Exclude*

Civil requests the Court exclude the opinions of ARC's expert, Weir International, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  (Doc. # 163 at 1).  Civil specifically argues that Weir International's testimony, as it relates to lost profits, is "not based on relevant information and do[es] not represent the correct measure of damages for ARC's breach of contract claim."  (*Id.* at 2).  Having already determined that Civil is entitled to summary judgment on its Partial Motion for Summary Judgment, the Court need not address these arguments.  Therefore, the Motion to Exclude (Doc. # 163) is **denied as moot**.

### 4.    *Civil's Motion for Summary Judgment on ARC's Claims*

Civil moves for entry of summary judgment on ARC's claims pursuant to Federal Rule of Civil Procedure 56.  (Doc. # 165 at 1).  Civil argues it is entitled to summary judgment on ARC's breach of contract claim for numerous reasons, including: (1) ARC cannot recover its damages; (2) ARC breached the contract first; (3) Defendant did not have an obligation to mine 38,000 tons of coal; and (4) the damages do not flow from the alleged breach.  (*Id.* at 13).  Having already determined that Civil is entitled to summary judgment on ARC's claims (*Supra* at III(B)(2)), the Court need not address these

arguments.  Therefore, the Motion for Summary Judgment on ARC's Claims (Doc. # 165) is **denied as moot**.

### 5.    *Motion for Summary Judgment on Civil's Counterclaims*

Civil has also submitted a Motion for Summary Judgment on its Counterclaims. Civil argues it should be granted summary judgment in favor of Count I, breach of contract against Burning Knob; Count II, breach of contract against ARC; and Count V, piercing the corporate veil/judgment joint and several.  (Doc. # 164 at 1).  Civil alleges that it is entitled to summary judgment on its breach of contract counterclaims against ARC and Burning Knob because the failure to pay Civil for its work was a breach of the Mining Agreement and Material Agreement.  (*Id*. at 16).  Moreover, Civil alleges that the corporate veils of ARC and Burning Knob should be pierced because they were "empty interchangeable shells used to keep money out of the hands of creditors."  (*Id*. at 19).

### a.    **Breach of Contract against ARC.**

Civil first argues that this Court should grant summary judgment on its breach of contract claim against ARC because "ARC [] breached the terms of the Mining [] Agreement[] by failing to pay Civil amounts owed for work it performed."  (*Id*. at 18).  To prevail on a breach of contract claim, a party must show that: (1) a contract exists, (2) the contract was breached, and (3) the plaintiff has suffered damages as a result of the breach of contract.  *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019).[8]  The court addresses each factor in turn.

---

[8]    As previously mentioned, the Mining Agreement is governed by Kentucky law and the Material Agreement is governed by Virginia law.  Both commonwealths have similar, if not identical, breach of contract standards.  *Compare Id*. with *Ramos v. Wells Fargo Bank, NA,* 289 Va. 321, 323 (2015) (elements for breach of contract are (1) legally enforceable obligation, (2) breach of that obligation, and (3) injury or damage).  Given that both parties cite almost exclusively to Kentucky law, the Court will cite to Kentucky law in resolving this claim.

### i.    The Mining Agreement is enforceable.

Here, there is no dispute that both the Mining Agreement exists and is enforceable. (*See* Doc. # 177 at 18) ("There is no dispute about whether the [Material Agreement] and [Mining Agreement] are enforceable."). However, there is a dispute regarding the interpretation of the payment provisions. Specifically, the parties disagree about when, under the Mining Agreement, payments to Civil by ARC were due. (*See* Doc. # 177 at 18) ("[T]he parties have disputes concerning when payments were due under the agreements . . . .").

Because the crux of Civil's breach of contract counterclaims relies on this payment date, the Court must determine if there is any ambiguity surrounding the payment provisions in the Mining Agreement. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (construction and interpretation, including questions of ambiguity, are questions of law.). In the absence of any ambiguity, a "contract is interpreted by looking solely to the four corners of the agreement." *Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.*" Cantrell Supply, Inc. v. Liberty Mut. Ins. Co*., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (citations omitted). If the language is unambiguous, the words should be read pursuant to their "ordinary meaning" and "enforced strictly." *Outfront Media, LLC v. LeMaster*, [] 2021 WL 4314059, at * 8 (6th Cir. 2021).

It is unclear to the Court what ambiguity could exist, as the terms of the Mining Agreement are undeniably clear and unambiguous. Section 4 of the Mining Agreement states in part that "[p]ayments made by [ARC] shall be made no later than 7 business

days after the 1st and 15th of each month." (Doc. # 164-6 at 3). ARC argues that the Agreements "do not specify whether payment was due from date of service, or the date the invoice was sent for the service." (Doc. # 177 at 17). The Court is not persuaded. The Agreement's terms are clear. Payment due to Civil under the Mining Agreement was due no later than seven (7) business days after the 1st and 15th of each month. To adopt ARC's interpretation would introduce contingencies that are otherwise entirely absent from the Mining Agreement. As such, the Mining Agreement's payment provisions are plain and unambiguous and must be strictly enforced. Therefore, the first element of breach of contract is satisfied.

### ii.    ARC breached the Mining Agreement.

The second element of a breach of contract claim is whether the contract was actually breached. Civil alleges the Agreements were breached when ARC "fail[ed] to pay Civil the amounts it was owed, when those amounts were due under the terms of the Mining [] Agreement[]." (Doc. # 164 at 18). Specifically, Civil argues that it invoiced a total of $1,159,344.80 for work conducted under both agreements but was paid a total of $292,090.00 by CM Mining, CM Land & Coal, and Burning Knob. (*Id*.).

ARC does not seem to dispute that it stopped paying Civil. Rather, it takes a finger-pointing defense, stating that "Civil breached first and caused more damage than the amount sought." (Doc. # 177 at 19). In essence, ARC argues that because Civil breached first, it lost its right to complain of any subsequent breach by ARC. (*Id*. at 18). Specifically, ARC points to numerous actions by Civil which it believes demonstrates a material breach of the Mining Agreement. These alleged breaches are: (1) use of an old highwall miner, (2) mining to shallow depths, (3) mining start date of November 12th, (4) failure to provide

19

Daily Hole Log information, (5) failure to provide a weekly summary, (6) failure to employ double shifts, (7) failure to employ Sunday shifts, (8) ash percentage, and (9) failure to meet the 38,000 ton requirement.  (*Id*. at 18-19).

Unfortunately for ARC, out of these nine alleged breaches, the only one that ARC originally alleged in its complaint was the failure to mine 38,000 tons.  (Doc. # 1-1 at ¶¶ 12-13).  It is well settled in the Sixth Circuit that "[a] non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion."  *Tucker v. Union of Needletrades, Indus. and Textile Emps*., 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)).  Additionally, "a plaintiff may not expand its claims to assert new theories . . . in response to summary judgment[.]"  *RJ Control Consultants Inc. v. Multiject, LLC*, 981 F.3d 446, 454 n.6 (6th Cir. 2020); *see also Guiffre v. Local Lodge No. 1124, United Steelworkers of America*, 940 F.2d 660 (6th Cir. 1991) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment.").

While ARC did allege a breach of contract in its Complaint, it based the entire claim on the grounds that Civil "had mined only 21,983.49 raw tons of coal from the Property, barely over half of the 38,000 minimum tonnage required."  (Doc. # 1-1 at ¶ 11).  While it may be that the alleged failure to employ double shifts or mining to shallow depths could have contributed to the lack of 38,000 tons, the Sixth Circuit is clear that new theories may not be asserted in response to summary judgment.  Moreover, not only is ARC asserting new theories but are alleging wholly new claims as well.  (*See* Doc. # 177 at 19) (stating that mining to shallow depths was a "breach of the express [] obligation to

mine 'in a good and workmanlike manner'"). By alleging eight new breach of contract claims, ARC is doing exactly what the Sixth Circuit has prohibited. As such, the question the Court must address is whether there is a genuine issue of material fact that ARC breached the Mining Agreement before Civil failed to mine 38,000 tons in violation of the Mining Agreement.

Here, it is undisputed that Civil entered into the Mining Agreement and the Material Agreement on October 23, 2019. (Doc. # 104 at 6). Pursuant to the Mining Agreement, Civil agreed to mine a minimum of 38,000 raw tons per month.[9] Pursuant to the Material Agreement, Civil was to remove material, load and transport coal, prepare the highwall for mining operations, and reclaim premises. (Doc. # 164-7). Civil began mining around mid-November 2019. The exact date of mining is unknown to the Court, as ARC's Complaint states that Civil began mining on November 13th, while various pleadings stated that mining began on November 12th. (See Docs. # 1-1, 104, and 104-3). By December 15th, Civil had allegedly only mined 21,983.49 tons of coal. (Doc. # 1-1 at ¶ 11).

Applying the plain language of the Mining Agreement to the facts at hand, Civil would have been required to mine 38,000 tons by December 12th or 13th. As the record indicates, by December 15th, it had not done so. However, as the invoices and business records presented by Civil demonstrate, payments due by ARC on December 9, 2019 have yet to be paid. (Doc. # 164-16). Therefore, ARC failed to pay Civil, in violation of the Mining Agreement, prior to Civil's month to mine 38,000 tons had expired. Therefore,

---

[9]    Whether this was a requirement is contested. However, for present purposes, the Court need not address the issue.

the Court does not find a genuine dispute of material fact to the second element of breach of contract.

### iii.    *There is a genuine dispute regarding damages.*

The final element of a breach of contract claim is whether Civil suffered damages from ARC's breach.  Civil alleges it is entitled to $867,254.87 in compensatory damages. (Doc. # 164 at 18).  ARC disputes these damages, arguing that Civil improperly billed for numerous items, such as pond construction, rock-heavy loads, and tons that exceeded the ash content.  While Civil responds, disputing that the Mining Agreement required certain ash content percentages, it fails to support its argument any farther.  Moreover, it fails entirely to respond to the pond construction argument and merely states that the "rock heavy loads" are refuted by the Mining Agreement.  Therefore, the Court finds that there is a genuine dispute of material fact regarding the damages to which Civil is entitled. Accordingly, Civil's Motion for Summary Judgment on its breach of contract claim against ARC is **granted** with respect to the existence of a contract and breach of that contract and denied with respect to damages. That claim will proceed to trial.

### b.    Breach of contract against Burning Knob

Civil next argues that this Court should grant summary judgment on its breach of contract claim against Burning Knob on the same grounds, specifically because "Burning Knob breached the terms of the [] Material Agreement[] by failing to pay Civil amounts owed for work it performed." (*Id*. at 18).

Similar to the Mining Agreement, there is no dispute that the Material Agreement exists and is enforceable.  (*See* Doc. # 177 at 18) ("There is no dispute about whether the [Material Agreement] and [Mining Agreement] are enforceable.").  However, there is

a dispute regarding the payment provision in the Material Agreement.  As the Court found with the Mining Agreement, it similarly finds that no ambiguity could exist with respect to the Material Agreement either.  Exhibit B of the Material agreement, labeled "Payment Terms[,]" states that "[p]ayments for both Material Removed and Placed in the fill area or against the highwall and for Coal Transportation [] shall be made to the Contractor on the 10th and 25th day of each month, for the preceding pay period."  (Doc. # 164-7 at 31).

In addition to the invoice argument made, Burning Knob also argues that payment was not due to Civil until Burning Knob received payment from Wellmore.[10]  The Court is not persuaded.  The Agreement's terms are clear.  Payment due to Civil under the Material Agreement was due on the 10th and 25th of each month for the preceding pay period.  As the Court has already stated, to adopt Burning Knob's interpretation would introduce contingencies that are otherwise entirely absent from the Material Agreement.  As such, the Material Agreement's payment provisions are plain and unambiguous and must be strictly enforced.  Therefore, the first element of breach of contract is satisfied.

### i.    There is a genuine dispute of material fact regarding breach of the Material Agreement.

The second element of a breach of contract claim is whether the contract was actually breached.  Civil alleges the Material Agreement was breached when Burning Knob "fail[ed] to pay Civil the amounts it was owed, when those amounts were due under the terms of the [] Material Agreement[]."  (Doc. # 164 at 18).  Specifically, Civil argues

---

[10]    At the oral argument, Counsel for ARC and Burning Knob argued that there was a dispute around payment provisions because neither entity could pay Civil until paid by Wellmore. However, when asked by this Court if either agreement required that Civil wait for payment until ARC and Burning Knob received payment from Wellmore, Counsel definitively stated no.

that it invoiced a total of $1,159,344.80 for work conducted under both agreements but was paid a total of $292,090.00 by CM Mining, CM Land & Coal, and Burning Knob. (*Id*.).

Similar to ARC, Burning Knob does not dispute that it stopped paying Civil. Rather, it argues that because Civil breached first, it is prohibited from bringing a subsequent breach of contract claim. (Doc. # 177 at 18). Specifically, Burning Knob alleges that Civil breached the Material Agreement "early and often" by: (1) starting the project late, (2) failing to have its trucks certified, (3) delaying the first shipment, and (4) missing the first payment period. (*Id*. at 19).

Unlike ARC, however, Burning Knob is not a non-moving party plaintiff. Rather, Burning Knob is a counter-defendant who did not file the original Complaint and is not prohibited under relevant Sixth Circuit case law to assert a theory in Response to a summary judgment motion. Because Burning Knob is not prohibited from asserting that Civil started the project late in breach of the agreement, there is a genuine dispute of material fact regarding whether Burning Knob breached the agreement, such that Civil is entitled to recover damages. Therefore, the Court **denies** Civil's Motion for Summary Judgment on the breach of contract claim against Burning Knob.

### c.    Unjust Enrichment and Breach of Duty of Good Faith and Fair Dealing

The Court **denies** summary judgment on Counts III (Unjust Enrichment) and IV (Breach of Duty of Good Faith and Fair Dealing) as Civil has not sufficiently proved that it is entitled to summary judgment on its Breach of Contract claims against ARC and Burning Knob.

### d.    Piercing the Corporate Veil

Civil further requests this court pierce the corporate veil of ARC and Burning Knob because they, along with the other Counterclaim Defendants, "regularly ignored corporate formalities, shuffled money between them, and were used for the explicit and admitted purpose of avoiding liability."  (Doc. # 164 at 19).  As such, Civil requests that this Court disregard corporate distinctiveness and hold the parties jointly and severally liable.  (*Id.*).

Generally, Kentucky law requires "a corporation [to] be treated as a separate legal entity," with its own assets and liabilities.  *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 174 (Ky. 2012) (citing *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974)).[11]  However, in certain circumstances, a court may "pierce the corporate veil."  Put simply, a court can disregard the limited liability of a corporation and "the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence."  *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012).  But, "a court will disturb the legal fiction of corporate separateness only in the rarest of circumstances."  *Schultz*, 360 S.W.3d at 174 (citing *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)).

In Kentucky, "the doctrine of piercing the corporate veil arises in equity" and is a remedy for imposing liability.  *Schultz*, 360 S.W.3d at 175; *see also Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 211 (Ky. Ct. App. 2009).  The Kentucky Supreme Court has clarified that the test for piercing the corporate veil consists of two dispositive elements: "(1) domination of the corporation resulting in a loss of corporate separateness and (2)

---

[11]    In all relevant motions, Civil, Burning Knob, and ARC apply Kentucky law to this claim. Therefore, the Court will look to Kentucky law in its analysis.

circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel,* 360 S.W.3d at 165. "[G]enerally, the first element focuses on the relationship between the corporation and the owners of other corporate actors, while the second element concerns the relationship between the corporation and the plaintiff." *Bear, Inc. v. Smith*, 303 S.W.2d 137, 148 (Ky. Ct. App. 2010); *see also Mountain Paving and Const., LLC v. Workman*, No. 2012-CA-1822-MR, 2014 WL 272463, *2 (Ky. Ct. App. Jan. 24, 2014). The Court will examine both elements in turn.

### i.    *Corporate separateness*

"In assessing the first element, the courts should look" to an "expansive list of factors." *Inter-Tel*, 360 S.W.3d at 165. Such factors include: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets form the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationship among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominate stockholders. *Id.*; s*ee also Kentucky Petroleum Operating Ltd. v. Golden*, No. 12-164 2015 WL 927358, at *6 (E.D. Ky. Mar. 4, 2015). While the Court should consider all eleven factors in its analysis, the most critical factors are "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinction between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature."

*Arapahoe Resources, LLC v. Professional Land Resources, LLC*, No. 15-10, 2015 WL 4887321, at *3 (E.D. Ky. Aug. 17, 2015) (quoting *Inter-Tel*, 360 S.W.3d at 164).

Civil alleges that several of these factors are prevalent among the Burning Knob entities,[12] mainly, inadequate capitalization, failure to observe corporate formalities, payment of each other's obligations and receipt of revenue, and sharing leadership and ownership.  (Doc. # 164 at 22-23).  Based on the record, the Court is inclined to agree.

The Court notes that inadequate capital is one of the most critical factors.  The *Inter-Tel* court stated that "consideration of the adequacy of capitalization concerns the financing of the corporation, not its condition at the time of the events complained of or thereafter.  360 S.W.3d at 167.  Therefore, the undercapitalization inquiry focuses on whether ARC and Burning Knob were undercapitalized at the time of the initial financing. The parties dispute whether the Burning Knob entities initial capitalization was adequate. The Burning Knob entities argue that they were not inadequately capitalized because Burning Knob had coal and the Wellmore Option as assets, and that Burning Knob "received infusions of $102,090 through November 22."  (Doc. # 177 at 23-24).  On the other hand, Civil argues that the Burning Knob entities were inadequately capitalized by pointing out that both ARC and Burning Knob only had $100 in their bank accounts when opened, and that ARC admittedly was not capitalized.  (Doc. # 164 at 21-22).

The Court finds that at a minimum, ARC most certainly was undercapitalized. Certainly, while the Burning Knob entities try to argue otherwise, in response to the interrogatory "[identify] the amount of original capitalization of ARC[,]" ARC responded that "[i]t was not capitalized, but was funded on an as-needed basis."  (Doc. # 164-20 at

---

[12]    For sake of clarity, the court will refer to CM Land and Coal LLC, CM Mining, Burning Knob, and ARC, collectively, as the "Burning Knob entities."

56). Thus ARC "had grossly inadequate capital for day-to-day operations because it had no funds at all, literally nothing of its own." *Inter-Tel*, 360 S.W.3d at 167. With respect to Burning Knob, the Court notes that an initial bank account balance of only $100 is certainly inadequate for the type of business venture Burning Knob was involved in. *See Kentucky Petroleum*, 2015 WL 927358, at * 7 ("It stains credulity to believe that $10.00 is sufficient capitalization to operate a business."). Burning Knob's argument that the coal and Wellmore Option operated as assets and thus Burning Knob was sufficiently capitalized is not convincing to this Court because Burning Knob was nevertheless unable to pay its corporate obligations to Civil, as will be discussed below. Therefore, this factor counsels in favor of finding lack of corporate separateness.

The Court also notes that the payment of each other's corporate obligations is another critical factor in the *Inter-Tel* analysis. This factor also favors Civil. While admittedly the Burning Knob entities adhered to corporate formalities in that each maintained its own bank accounts and some held its own assets, the Court finds it is apparent that CM Mining and Land and Coal essentially financed Burning Knob and ARC's operation. CM Land and Coal directly paid ARC's payroll and admitted to "provid[ing] funds to Burning Knob" and "other Affiliates." (*See* Docs. # 164 at 12, 164-22 at 34-40, and 164-20 at 111 and 183). The Burning Knob entities effectively conceded that CM Mining and Land and Coal funded ARC and Burning Knob, yet argue that this was for the benefit of Civil because "revenues from Wellmore had not yet started flowing in . . . ." (Doc. # 77 at 24). This argument does not convince the Court. Certainly, not only do the Burning Knob entities concede that financing by CM Mining and Land and Coal was occurring but seemingly concede that such financing was occurring because

Burning Knob had inadequate capital to pay Civil.  Therefore, this factor favors finding a lack of corporate separateness.

Civil relies on the same set of facts to prove that the Burning Knob entities disregarded corporate formalities. Civil additionally points to Burning Knob's failure to file annual reports, and the entities' failure to produce corporate records when prompted. (Doc. # 164 at 23).  Additionally, the Burning Knob entities share leadership: Murray and Crowder control ARC and CM Land and Coal LLC.  (Doc. # 128-4).  Murray is the sole owner of CM Mining and Crowder is the sole owner of Burning Knob.  (*Id*.).  Therefore, these factors are also in favor of finding lack of corporate separateness.

The activities of the Burning Knob entities resemble that in the *Inter-Tel* case. The Burning Knob entities acted interchangeably in paying each other's obligations, shared officers and leadership, and were significantly undercapitalized.  Like the *Inter-Tel* entities, the Burning Knob entities have exerted "little, if any, effort . . . in maintaining separate corporate identities."  *Inter-Tel*, 360 S.W.3d at 166.  Accordingly, the Court finds that the first factor in the piercing the corporate veil analysis has been satisfied.

### ii.  Injustice sanctioned

Once the Court has determined that corporations have lost separateness, the Court must then identify the injustice that would be sanctioned by continued recognition of the corporate form.  Under *Inter-Tel*, one such injustice is a parent corporation or director causing a subsidiary's liability and then rendering the subsidiary unable to pay. 360 S.W.3d at 167-68.  A second potential injustice is a "scheme to shift assets to a liability-free corporation while shifting liabilities to an asset-free corporation."  *Kentucky Petroleum*, 2015 WL 927358, at *8.

29

The Court finds that there is an issue of material fact with respect to the second factor. Mainly, Civil argues that the creation of separate entities and the undercapitalization of Burning Knob was a "scheme to intentionally protect CM Land and Coal." (Doc. # 164 at 24). Civil further argues that the "record evidence is not disputed" that Murray and Crowder's intention was to "ensure that Civil could not reach other capitalized entities." (Doc. # 182 at 13). The Burning Knob entities dispute these allegations, stating that "no liability was shifted to BK or ARC" and that land and Coal did not cause ARC and Burning Knob's undercapitalization. (Doc. # 177 at 23). The Court finds that there is an issue of material fact regarding whether there was in fact a scheme to shift assets.

Accordingly, Civil's Motion for Summary Judgment for its piercing the corporate veil claim (Count V) is **granted** with respect to the existence of lack of corporate separateness, and denied with respect to whether there would be fraud or injustice sanctioned.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    Civil's Motion for Partial Summary Judgment (Doc. # 104) is **GRANTED**;

(2)    Civil's Motion for Leave to File a Sur-Reply (Doc. # 158) is **DENIED AS MOOT**;

(3)    Civil's Motion to Exclude Expert Testimony (Doc. # 163) is **DENIED AS MOOT**;

(4)    Civil's Motion for Summary Judgment on Defendant's Counterclaims (Doc. # 164) is **GRANTED IN PART AND DENIED IN PART**, being **granted** as

to the breach of contract claim against ARC on the existence of a contract and a breach thereof, and being **granted** as to the piercing the corporate veil claim on the lack of corporate separateness, and being **denied** as to all other claims and elements; and

(5)    Civil's Motion for Summary Judgment on Plaintiff's Claims (Doc. # 165) is **DENIED AS MOOT**.

This 26th day of March, 2025.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\PikeCivil\2020\20-27 MOO.docx